UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | | |
|---|---|---|
| JODI BRUNAT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:20-cv-04017-SLD-JEH |
| | ) | |
| JOHN E. WHITLEY,[1] | ) | |
| | ) | |
| Defendant. | ) | |

ORDER

Before the Court is Defendant John E. Whitley, Acting Secretary of the Department of

the Army's Motion for Summary Judgment, ECF No. 7. For the reasons that follow, the motion

is GRANTED.

BACKGROUND[2]

I.      Position

Plaintiff Jodi Brunat was employed as a Contract Specialist intern at the Army

Contracting Command–Rock Island (ACC-RI) from June 17, 2017 to June 20, 2018, the

effective date of her termination. Jessica Dobbeleare was Plaintiff's supervisor from June 26,

2017 until Plaintiff moved to the Home Room Branch in "the January 2018 time period," at

which point Mary Beth Watkins became her first-level supervisor. Def.'s Mem. Supp. Mot.

Summ. J. 2–3, ECF No. 7-1 (quotation marks omitted). In the Home Room, interns took classes,

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), John E. Whitley, Acting Secretary of the Department of the Army, is substituted for his predecessor. The Clerk is directed to update the docket accordingly.
[2] At summary judgment, a court must "constru[e] the record in the light most favorable to the nonmovant." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). Unless otherwise noted, the factual background of this case is drawn from Defendant's statement of undisputed material facts, Def.'s Mem. Supp. Mot. Summ. J. 2–23, ECF No. 7-1; Plaintiff's statement of disputed material facts and additional material facts, Pl.'s Mem. Supp. Resistance Mot. Summ. J. 1–29, ECF No. 14-1; Defendant's reply to Plaintiff's additional material facts, Def.'s Reply 1–5, ECF No. 15; and exhibits to the filings.

received training, and worked on projects so that they could learn how to execute contract assignments.  Patricia Allers was Plaintiff's trainer and team lead.

## II.    Work Behavior

### a.   Complaints Received

Dobbeleare received complaints from students in Plaintiff's August 2017 class that Plaintiff was "disruptive in class, constantly speaking out of turn, and causing the entire class to have a delayed departure" and that her "disruptive behavior turned the class into a negative learning experience for everyone."  *Id*. at 3 (quotation marks omitted).[3]  The other interns also complained to Watkins about Plaintiff being disruptive in class.  Dobbeleare wrote in a memo to Watkins that—based on her observations of Plaintiff's behavior—she would not want Plaintiff assigned to her team in the future.

While Plaintiff denies that she disrupted the class by asking too many questions, she admits that Watkins requested that Plaintiff keep her questions in class on topic, that she wait until after class to ask more involved follow-up questions, and that she write down her questions instead of asking all of them to avoid disrupting class.  Watkins informed Plaintiff that the other interns were calling her behavior "the Jodi show."  *Id*. at 5.

### b.   Baker Project

Plaintiff was involved in a project with Gary Baker, a customer of ACC-RI.  During the course of the project, Baker became upset, which Watkins thought was due to something that Plaintiff had said.  Watkins instructed Plaintiff to stop any and all communications with Baker

---

[3] While Plaintiff denies the accuracy of these complaints, Pl.'s Mem. Supp. Resistance Mot. Summ. J. 3, she did not respond to Defendant's statement that Dobbeleare received the complaints, *id.* at 2, and thus admits it.  *See* CDIL-LR 7.1(D)(2)(b)(6).

until Allers, the team lead, resolved the situation.  After receiving this instruction, Plaintiff emailed Baker and answered a phone call from him.

The Director of Business Operations at ACC-RI, Carolyn Young, testified that she would have handled the situation the same way that Watkins did, as issues with customers were to be taken very seriously.  Plaintiff was the only intern that Watkins had to instruct to cease communications with a customer until a situation could be resolved.

Once the situation had calmed down, Plaintiff was permitted to email Baker, so long as Allers was copied on all of the messages.  Baker's contract was awarded, and Watkins sent an email to Plaintiff on May 3, 2018 congratulating her on her work.

### c.  Leave Slip Incident

On May 10, 2018, Allers observed that Plaintiff was absent for longer than the thirty-minute period allotted for lunch and reported this to Watkins.  Watkins did not see a leave slip from Plaintiff and asked Plaintiff about it.  Plaintiff told Watkins that she had used her lunchtime to attend an appointment and that upon her return she had participated in the health and wellness program by walking for twenty minutes.  Watkins considered the matter resolved and did not pursue it further.

### d.  Training Event and Workload Concerns

Plaintiff declined to attend a training session about a clause matrix assignment on May 4, 2018.  While the parties dispute the reason why she did not attend, it is not disputed that when Plaintiff and Allers subsequently discussed Plaintiff's absence, both raised their voices, and Allers told Plaintiff she was being insubordinate.  Watkins heard about this incident, and she informed Young, who decided to question Allers and another employee, Donna Ponce, about what had happened with Plaintiff.

On May 7, 2018, Plaintiff spoke with Watkins and Ponce and told them that she was unable to complete both her contracting work and the clause matrix assignment and requested help in prioritizing her workload.  Watkins declined to prioritize Plaintiff's workload for her, stating that Plaintiff's assignments were all important and that she should multitask.  Watkins told Plaintiff that she considered her behavior to be insubordinate, and she instructed Plaintiff to keep up with all of her work in order to meet the deadlines.  When Plaintiff asked for more guidance on the clause matrix assignment, Watkins told her that the guidance she was requesting had been the purpose of the training session on May 4, 2018 that Plaintiff had chosen not to attend.

On May 11, 2018, Watkins assigned a new project to two other interns in the Home Room. Plaintiff was upset that she did not receive a new assignment like the other interns. Plaintiff claims she was the only intern who did not receive an additional project that day. Watkins explained to Plaintiff that interns do not receive assignments all at the same time but that work is distributed based upon the interns' current workload.  Allers confirmed that the workload was distributed evenly and stated that Plaintiff always had a solid workload.

### III.    Disability Reporting

At the time of Plaintiff's hiring, she affirmatively reported that she did not have a disability or serious medical condition, even though anxiety and depression were both listed as optional medical conditions that Plaintiff could have selected on the relevant form.

Plaintiff never provided documentation of a diagnosis of anxiety and depression to Watkins or to anyone else in the agency.  Young stated that she and Watkins had never discussed Plaintiff's medical condition.

4

At one point, in a meeting between Watkins and Plaintiff, Watkins made a gesture of raising her hands above her head while discussing Plaintiff's behavior. Plaintiff assumed that this gesture was referring to her anxiety, but Watkins testified that the gesture was not intended to convey anxiety. Plaintiff testified that it was only after this gesture was made that she told Watkins that she was taking medication for anxiety and depression.[4]

## IV.    Alleged Harassment and Retaliation

On May 23, 2018, Allers emailed Plaintiff and two other interns because they had failed to upload certain forms as required. The three interns had experienced technical difficulties, so they had sent their documents via email directly to another point of contact instead of uploading them. One intern copied Allers on the email to keep her informed; Plaintiff, however, did not do the same. Allers followed up with the three interns via email about their direct submission of the forms, but she was not aware that any disciplinary action had been taken against any of them for failing to follow instructions.

Plaintiff believes that she was the only intern who received her performance evaluation by email without a face-to-face meeting to go over it. She agreed with the fully successful rating she received in her evaluation but disagreed with comments stating that she needed to improve her interpersonal skills and foster a more positive work environment. Watkins stated that Plaintiff's job performance was acceptable but that her conduct was not. Plaintiff denies that her conduct was unacceptable.

---

[4] While the parties do not dispute that Watkins made a gesture, in Plaintiff's testimony, she states that during her meeting with Watkins, Watkins "blatantly brought up [Plaintiff's] disability and [her] anxiety." Fact-Finding Hr'g Tr. 40:4–5, Def.'s Mem. Supp. Mot. Summ. J. Ex. 1 at 244–569, ECF No. 12 at 9–334. Plaintiff turns this into an argument that "Watkins['] actions towards [Plaintiff] were motivated by her disability because Watkins blatantly stated it." Pl.'s Mem. Supp. Resistance Mot. Summ. J. 27. But Plaintiff also testified that she told Watkins about taking medication for depression and anxiety *after* Watkins had made the hand gesture, Fact-Finding Hr'g Tr. 37:19–24, and, later, that she told Watkins about her medications after Watkins had brought up her depression and anxiety, *id*. at 43:1–2. Defendant denies that Watkins made any reference to Plaintiff's depression and anxiety and argues that the evidence does not support that it happened. *See* Def.'s Reply 3.

When Plaintiff arrived at work on June 6, 2018, she found a document on her desk bearing a silhouette of a face and a printed statement reading "Mental Health Awareness Support.  Not Stigma."  *Id*. at 18 (quotation marks omitted).  Plaintiff reported this to Watkins, and Watkins agreed that it was inappropriate for this to be placed on her desk.  Watkins did not know how the document had appeared there.  Watkins said that if anything else like that happened, Plaintiff should inform her.

## V.    Termination

After the May 4, 2018 incident between Plaintiff and Allers, Watkins sought out advice from Management Employee Relations Specialist Beth Novak as to how to deal with Plaintiff's conduct issues.  Novak advised Watkins to terminate Plaintiff.  Novak was not aware of any other probationary employee who had behaved similarly to Plaintiff but had not been disciplined. Watkins also communicated with Dobbeleare in order to find out about any issues with Plaintiff prior to the time Watkins had become Plaintiff's first-level supervisor in the Home Room.

Plaintiff was provided with written notice of her termination on June 20, 2018, and it became effective that same day.  The notice of termination documented the following issues with her conduct in the workplace: a "demonstrated pattern of refusing to following directions; being argumentative and disrespectful to trainers, [her] Team Lead[], and [Watkins]; engaging in conduct that is unprofessional and divisive; and unwillingness to respect authority."  Not. Termination 1, Def.'s Mem. Supp. Mot. Summ. J. Ex. 1 at 212–14, ECF No. 11 at 21–23.[5] These issues "le[d] [Watkins] to conclude [Plaintiff's] continued employment would be detrimental to the efficiency and effectiveness of [the] organization."  *Id*.  Watkins specifically

---

[5] Defendant's Exhibit 1, ECF Nos. 8–12, is the entire investigative file.  When citing to a portion of the investigative file, the Court identifies the title of the document referred to and the page number from the bottom right corner of the document, in addition to the ECF page number.

pointed to the complaints from other interns about Plaintiff's disruptive behavior, her repeated interruptions of trainers' discussions with other employees, her communications with a customer despite instructions to not communicate with him, her refusal to complete a project assigned to all the interns, and her failure to attend the training session on May 4, 2018 and the resulting altercation with Allers.  *Id*. at 1–2.

## VI.    Procedural History

Plaintiff initially contacted an Equal Employment Opportunity ("EEO") counselor on May 11, 2018 to report a hostile work environment and harassment because of her disability.  On May 15, 2018, Plaintiff emailed Watkins that she was going to drop off documents at the EEO office later that day.  Watkins was notified of Plaintiff's EEO complaint on May 23, 2018.  After Plaintiff was terminated, she filed a formal complaint of discrimination on June 20, 2018, alleging that she had been discriminated against on the basis of her disability—anxiety and depression—and her termination was retaliation for contacting an EEO counselor.  She claims that only Watkins discriminated and retaliated against her.  She requested a final agency decision by letter on April 22, 2019, but 180 days passed without agency action.

Plaintiff filed this suit on January 31, 2020.  Compl., ECF No. 1.  She alleges first that her termination constitutes disability discrimination, *id*. at 4; second, that she faced a hostile work environment because of her disability,[6] *id*. at 2, 4; and third, that Defendant terminated her as retaliation for contacting the Army EEO office, *id*. at 4–5.  Defendant moves for summary judgment on all of Plaintiff's claims.  Def.'s Mem. Supp. Mot. Summ. J. 1–2.

---

[6] Plaintiff's disability discrimination claim includes allegations that she was harassed because of her disability, Compl. 4, and elsewhere in the complaint, she alleges a hostile work environment, *id*. at 2.  Defendant treats her harassment claim as a separate claim for a hostile work environment.  Def.'s Mem. Supp. Mot. Summ. J. 32–37.  The Court will do the same.

## DISCUSSION

### I.    Legal Standard

A court will grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party has the initial responsibility of demonstrating the basis of its motion and showing "the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The nonmoving party must then respond "by identifying specific, admissible evidence showing that there is a genuine dispute of material fact for trial."  *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  Parties may not merely refer to their own pleadings, *Celotex*, 477 U.S. at 324, but must instead "cit[e] to particular parts of materials in the record, including depositions, documents, [and] . . . affidavits or declarations" or "show[] that the materials cited do not establish the absence or presence of a genuine dispute."  Fed. R. Civ. P. 56(c)(1).[7]

"[S]ummary judgment is not a paper trial," and the court's role "is not to sift through the evidence, . . . decid[ing] whom to believe."  *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).  Rather, the duty of the court is to decide "whether there is any material dispute of fact that requires a trial."  *Id.*  "A reviewing court examines the evidence in a light most favorable to the non-moving party and draws all reasonable inferences in favor of the party opposing the motion."  *Bowyer v. U.S. Dep't of Air Force*, 804 F.2d 428, 430 (7th Cir. 1986).  However, the nonmovant "is not entitled to the benefit of inferences that are supported by only

---

[7] "The court need consider only the cited materials, but it may consider other materials in the record."  Fed. R. Civ. P. 56(c)(3).

speculation or conjecture." *Nichols v. Mich. City Plant Plan. Dep't*, 755 F.3d 594, 599 (7th Cir. 2014) (quotation marks omitted).

## II.   Analysis

### a.   Disability Discrimination

In Count I, Plaintiff alleges that her termination by Defendant constitutes disability discrimination. Compl. 4. She brings this claim under Section 504 of the Rehabilitation Act, *see* Def.'s Mem. Supp. Mot. Summ. J. 25, which provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, . . . be subjected to discrimination . . . under any program or activity conducted by any Executive agency." 29 U.S.C. § 794(a); *see also Garg v. Potter*, 521 F.3d 731, 736 (7th Cir. 2008) ("[The] Rehabilitation Act prohibit[s] an employer from discriminating against a qualified individual with a disability because of the disability." (quotation marks omitted)).[8]  For a plaintiff to prevail on a claim of employment discrimination brought under the Rehabilitation Act, she must prove that

> (1) she is disabled within the meaning of the statute; (2) that she was otherwise
> qualified for the job in question; (3) that she was discharged or the subject of
> other adverse action solely because of her disability; and (4) the employment
> program of which her job was a part received federal financial assistance.

*Felix v. Wis. Dep't of Transp.*, 828 F.3d 560, 568 (7th Cir. 2016).

Defendant argues that the Court should grant summary judgment in his favor on this claim because "Plaintiff cannot meet her burden to produce admissible evidence showing . . . that disability discrimination, rather than the extensive list of reasons stated in her removal

---

[8] "In the employment context, the Rehabilitation Act requires that courts use the standards and provisions relating to employment of the Americans with Disabilities Act of 1990 [("ADA"), 42 U.S.C. §§ 12101–12213] . . . ." *Novak v. Principi*, 442 F. Supp. 2d 560, 565 (N.D. Ill. 2006) (citing 29 U.S.C. § 794(d)); *Garg*, 521 F.3d at 736 (applying the ADA's definition of disability to a Rehabilitation Act claim). The Court, therefore, cites to ADA and Rehabilitation Act cases interchangeably. The Court also cites to cases involving other antidiscrimination laws, such as Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e-17, because the statutes are similar. *See Miranda v. Wis. Power & Light Co.*, 91 F.3d 1011, 1017 (7th Cir. 1996) ("[I]n analyzing claims under the ADA, it is appropriate to borrow from our approach to the respective analog under Title VII.").

memorandum, was the true reason for her termination."  Def.'s Mem. Supp. Mot. Summ. J. 26–

27.[9]  When evaluating this issue at the summary judgment stage, a court must determine

"whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's . . .

[disability] caused the discharge or other adverse employment action."  *Ortiz v. Werner Enters.,*

*Inc.*, 834 F.3d 760, 765 (7th Cir. 2016).  Direct evidence of disability discrimination is rare.

*Rowlands v. United Parcel Serv.-Fort Wayne*, 901 F.3d 792, 802 (7th Cir. 2018).  Instead,

plaintiffs typically demonstrate discrimination with circumstantial evidence.[10]  *Id*.  This may

include "(1) suspicious timing; (2) ambiguous statements or behavior towards other employees in

the protected group; (3) evidence, statistical or otherwise, that similarly situated employees

outside of the protected group systematically receive[d] better treatment; and (4) evidence that

the employer offered a pretextual reason for an adverse employment action."  *Monroe v. Ind.*

*Dep't of Transp.*, 871 F.3d 495, 504 (7th Cir. 2017) (quotation marks omitted).  "Evidence must

be considered as a whole, rather than asking whether any particular piece of evidence proves the

case by itself . . . ."  *Ortiz*, 834 F.3d at 765.  "The ultimate burden of persuading the trier of fact

that the defendant intentionally discriminated against the plaintiff remains at all times with the

plaintiff."  *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981).

---

[9] Defendant also argues that he is entitled to summary judgment because "Plaintiff cannot meet her burden to produce admissible evidence showing either that she was disabled [or] her work conduct was meeting the Army's reasonable expectations."  Def.'s Mem. Supp. Mot. Summ. J. 26.  Plaintiff disputes this and contends that she can demonstrate that she was a qualified individual with a disability.  Pl.'s Mem. Supp. Resistance Mot. Summ. J. 30. Because the Court finds that Defendant is entitled to summary judgment regardless of whether Plaintiff has shown that she is disabled or otherwise qualified, it does not find it necessary to address these elements.

[10] Although the Seventh Circuit previously distinguished "direct" from "indirect" evidence, *Andrews v. CBOCS W., Inc.*, 743 F.3d 230, 234 (7th Cir. 2014), it has subsequently abandoned this practice, *Ortiz*, 834 F.3d at 763–66. While the evidence in an employment discrimination case is rarely straightforward, the Seventh Circuit has found that attempting to funnel the often factually complex cases into categories has a greater potential for creating confusion rather than simplifying the analysis.  *Id.* at 765.  This is not to say that courts should completely abandon any acknowledgement of the difference between types of evidence, but they should no longer separate evidence into categories when evaluating it.  *See Rowlands*, 901 F.3d at 801–02.

Plaintiff was notified of her termination on June 20, 2018 by Watkins.  Not. Termination 1.  The notice stated that her employment was being terminated because of her unacceptable conduct, in particular her "demonstrated pattern of refusing to follow directions; being argumentative and disrespectful to trainers, [her] Team Lead[], and [Watkins]; engaging in conduct that is unprofessional and divisive; and unwillingness to respect authority."  *Id*.  Watkins cited several examples: other interns had complained to Watkins about Plaintiff's disruptive and distracting behaviors; Plaintiff repeatedly interrupted trainers while they were having separate discussions with other employees; she "demonstrate[d her] disgruntlement with instructions given or class schedules in the training room with disrespectful . . . conduct"; she contacted a customer, Baker, by e-mail and telephone despite having been instructed to cease communications with him; she had refused to complete a project assigned to all the interns; and she failed to report to the contract clause project training session on May 4, 2018, which not only "le[d] to a disruptive altercation in which [she was] yelling at [her] Team Lead" but also resulted in Plaintiff later seeking individual assistance from Watkins about the project (which Watkins considered "unreasonable and a waste of time and resources").  *Id*. at 1–2.

Plaintiff argues that "there is a material issue of fact as to whether she did engage in the conduct complained of," categorically denying that she did so.  Pl.'s Mem. Supp. Resistance Mot. Summ. J. 30.  Rather, she contends, "her removal was a pretext for disability discrimination."  *Id*. at 29.  To establish pretext, a plaintiff must show more than "just faulty reasoning or mistaken judgment on the part of the employer"; she must demonstrate that the employer's proffered reason for terminating her was a "lie, specifically a phony reason for some action."  *Barnes v. Bd. of Trs. of Univ. of Ill.*, 946 F.3d 384, 389–90 (7th Cir. 2020) (quotation marks omitted).  "In determining whether an employer's stated reason [for discharge] is

pretextual, the question is not whether the employer's stated reason was inaccurate or unfair, but whether the employer honestly believed the reason it has offered to explain the discharge." *Monroe*, 871 F.3d at 505 (alteration in original) (quotation marks omitted); *see also Burks v. Wis. Dep't of Transp.*, 464 F.3d 744, 754–55 (7th Cir. 2006) ("An employee's attempt to avoid summary judgment cannot succeed unless the employee puts forth evidence suggesting that the employer itself did not believe the proffered reasons for termination.").

Plaintiff's central argument is that the asserted bases for her termination were not "brought up as part of her performance appraisal." Pl.'s Mem. Supp. Resistance Mot. Summ. J. 30–31. She believes that this creates a dispute of material fact as to whether Defendant honestly believed the reasons set forth in the termination notion because, she contends, the performance appraisal "includes an employee's conduct." *Id*. at 31. To counter this argument, Defendant cites to Young's testimony that "performance reviews are to address performance[; c]onduct is addressed when it occurs." Fact-Finding Hr'g Tr. 185:6–7, Def.'s Mem. Supp. Mot. Summ. J. Ex. 1 at 244–569, ECF No. 12 at 9–334. Plaintiff argues that "[t]he fact that . . . [D]efendant claims that performance appraisals do not reflect conduct is directly contradicted by [Plaintiff]," Pl.'s Mem. Supp. Resistance Mot. Summ. J. 18, 31, citing only to her own testimony that commentary on her conduct "would have been in the professional development section[; i]t would have been in the culture section[; i]t would have been in the leadership section," Fact-Finding Hr'g Tr. 117:13–18.

Plaintiff's speculation that her performance appraisal would necessarily have included any incident of inappropriate conduct does not create a dispute as to whether the reasons listed for her termination were pretextual. First, the Court notes that Plaintiff's performance appraisal reported that "[a]n area of growth [was] in the area of interpersonal skills" and that

"[i]mprovement could be made in the area of fostering a more positive work environment,"
Performance Appraisal 4, 5, Def.'s Mem. Supp. Mot. Summ. J. Ex. 1 at 71–78, ECF No. 8 at 71–
78, which undercuts Plaintiff's argument.  Second, Plaintiff adduces no evidence that a
performance appraisal is meant to record every incident that has occurred, even those addressed
separately.  Without more, the fact that Plaintiff's performance appraisal did not explicitly
address each incident mentioned in her termination notice does not establish pretext.

Moreover, Plaintiff has admitted the factual background of several of the incidents
mentioned in the termination notice.  Plaintiff does not deny that Dobbeleare and Watkins
received complaints from other interns that Plaintiff was disruptive, Pl.'s Mem. Supp. Resistance
Mot. Summ. J. 2, 5, and that Watkins asked her to take measures to avoid further disrupting
class, such as writing down her questions during class, *id*. at 5.  She admits Watkins told her
other interns were referring to her behavior in class as "the Jodi show."  *Id*.  She also admits that
she did not attend the May 4, 2018 training session, leading to a heated discussion with Allers,
*id*. at 12, and that she later asked Watkins for more guidance on the project that was the subject
of that training, *id*. at 14.  And even where Plaintiff denies that certain events occurred, she does
not show that Watkins had reason to believe that these incidents were lies.  Allers documented
that Plaintiff continually interrupted her discussions with other interns, Allers June 18, 2018
Email, Def.'s Mem. Supp. Mot. Summ. J. Ex. 1 at 217–19, ECF No. 11 at 26–28, which Plaintiff
disputes but provides no evidence to rebut, Pl.'s Mem. Supp. Resistance Mot. Summ. J. 7–8.
Watkins testified that she observed Plaintiff respond to trainers' instructions by saying, "really,
you've got to be kidding me," Fact-Finding Hr'g Tr. 285:7–286:11; even though Plaintiff denies
this, citing to her own testimony that it was not her but "the person that sat close to [her] in
training" that made statements of disgruntlement, *id*. at 106:7–107:8, nothing to which she cites

13

shows that Watkins did not honestly believe that it was Plaintiff who had been disrespectful.

Plaintiff does not dispute that Watkins told her to stop communicating with Baker, Pl.'s Mem.

Supp. Resistance Mot. Summ. J. 9, and she admitted that during this period she emailed Baker

and answered a phone call from him, Fact-Finding Hr'g Tr. 47:1–9, 48:19–49:10, although she

testified that she sent the email with Allers' permission and that she answered the phone call

without knowing that it was from Baker, *id*.  And while Plaintiff denies that she was refusing to

complete the clause project, *id*. at 109:3–11, Defendant provides copies of emails sent to

Watkins by several trainers reporting that Plaintiff had declared that she would not complete the

project, May 2, 2018 Emails, Def.'s Mem. Supp. Mot. Summ. J. Ex. 1 at 231–33, ECF No. 11 at

40–42.

Plaintiff has provided no evidence from which the Court could conclude that Watkins did

not honestly believe the reasons given in the termination notice, and so she has not established

the existence of a dispute of material fact as to whether the bases for her termination were

pretextual.[11]  The Court thus grants summary judgment for Defendant on Plaintiff's disability

discrimination claim.[12]

---

[11] Even if the incidents to which Watkins cites to justify Plaintiff's termination resulted from her alleged anxiety and depression, she still cannot prevail at summary judgment.  The Seventh Circuit has held that "[a]n employer may fire an employee for engaging in unacceptable workplace behavior without violating the . . . Rehabilitation Act[], even if the behavior was precipitated by a mental illness."  *Brumfield v. City of Chicago*, 735 F.3d 619, 630–31 (7th Cir. 2013); *see also Matthews v. Commonwealth Edison Co.*, 128 F.3d 1194, 1196 (7th Cir. 1997) ("The employer who fires a worker because the worker is a diabetic violates the Act; but if he fires him because he is unable to do his job, there is no violation, even though the diabetes is the cause of the worker's inability to do his job.").
[12] While Defendant also argues that summary judgment is warranted because Plaintiff has not identified similarly situated non-disabled employees who were treated better than she, Def.'s Mem. Supp. Mot. Summ. J. 30–32, because Plaintiff does not make this argument in her response, she has waived it.  *See Nichols*, 755 F.3d at 600 ("The non-moving party waives any arguments that were not raised in its response to the moving party's motion for summary judgment.").

14

### b.  Hostile Work Environment

In Count I, Plaintiff also claims that Defendant's "harassment . . . constitutes disability discrimination."  Compl. 4.  She alleges that she "was subjected to a hostile work environment due to her disability" because "both Watkins and Allers would speak disrespectfully to her on a daily basis"; she was berated for asking questions during intern training sessions; she was criticized for her interactions with Baker and instructed to "refrain from contacting him without . . . Allers' permission and presence"; she was accused of being insubordinate when she refused to attend the May 4, 2018 training session after Allers instructed her to attend; "Watkins falsely accused [Plaintiff] of being absent from work without having made an approved leave application when [Plaintiff] was on her lunch break and did not need approved leave"; Plaintiff was not assigned new work at one point; "Allers falsely accused [Plaintiff] of failing to follow procedures regarding uploading [a form] to the shared drive[] yet allowed a non-disabled intern to upload [the same form] directly as [Plaintiff] had without any criticism"; and her performance review was filed without her having a chance to comment on it.  *Id*. at 2–3.

Defendant argues that Plaintiff "cannot demonstrate a right to recovery for hostile work environment harassment based on disability" because "[s]he provides no evidence to raise even a reasonable inference that the acts she complains of were related to her purported disability and presents no facts sufficient to promote a reasonable inference of discriminatory animus on the part of Watkins . . . or Allers."  Def.'s Mem. Supp. Mot. Summ. J. 35–36.  Rather, he contends, "what [Plaintiff] pleads was daily yelling from her superiors was instead periodic correction for her missteps in the workplace on discrete and identifiable dates and times."  *Id*. at 34.  Plaintiff responds that the fact that "Allers and Watkins spoke disrespectfully to her on a daily basis" and, moreover, that a mental health awareness document was placed on her desk the same day

Watkins was interviewed by the EEO office make it "clear that [Plaintiff] was working in a hostile work environment."  Pl.'s Mem. Supp. Resistance Mot. Summ. J. 31–32.

> For hostile work environment claims to survive summary judgment,
>
> plaintiffs must present evidence that: (1) they were subject to unwelcome harassment; (2) the harassment was based on their [disability]; (3) the harassment was so severe or pervasive as to alter the conditions of employment and create a hostile or abusive working environment; and (4) there is a basis for employer liability.

*Ford v. Marion Cnty. Sheriff's Off.*, 942 F.3d 839, 856 (7th Cir. 2019) (alteration in original) (quotation marks omitted).  "To rise to the level of an actionable hostile work environment, the complained-of conduct must have been sufficiently severe or pervasive to have altered the conditions of her employment such that it created an abusive working environment." *Passananti v. Cook County*, 689 F.3d 655, 667 (7th Cir. 2012). "Offhand comments, isolated incidents, and simple teasing do not rise to the level of conduct that alters the terms and conditions of employment." *Id*.

The most compelling argument made by Plaintiff that she was subjected to a hostile work environment based on her alleged disability is that a mental health awareness document was placed on her desk.  Pl.'s Mem. Supp. Resistance Mot. Summ. J. 31.  But Plaintiff does not accuse Watkins of placing the poster on her desk, and she admits that "Watkins agreed that it was inappropriate for this to have been placed on her desk." *Id*. at 20.  While Plaintiff argues that "Watkins fail[ed] to take any action when . . . [Plaintiff] showed her the mental health cutout on her desk," *id*. at 32, Watkins testified that she "asked all of the trainers . . . if anyone else in the homeroom had a similar situation" and "asked [the trainers] to check with their employees," Fact-Finding Hr'g Tr. 264:2–9.  Plaintiff's bare assertion that Watkins "did nothing" about the poster, *id*. at 97:1, is not sufficient to show that Watkins either was responsible for the poster

16

herself or was negligent in remedying the issue.  *See Ford*, 942 F.3d at 856 ("On the [employer

liability] prong [of the hostile work environment test], employers are strictly liable for

harassment committed by supervisors, but liable for harassment by co-workers only if the

employer was negligent either in discovering or remedying the harassment." (quotation marks

omitted)).

Even if Watkins were responsible for the mental health document, a single, isolated

incident "do[es] not rise to the level of conduct" necessary to establish a hostile work

environment.  *See Passananti*, 689 F.3d at 667.  Plaintiff does not show that any of the other

alleged incidents of harassment can be linked to her alleged disability.  As to Watkins' and

Allers' disrespectful treatment of her, Watkins' request that she stop disrupting the class with her

questions, the May 4 training session incident, the leave slip incident, and Watkins' instruction to

briefly cease communicating with Baker, Plaintiff offers nothing more than a vague conclusion

that "it is clear that she was working in a hostile work environment."  *See* Pl.'s Mem. Supp.

Resistance Mot. Summ. J. 31–32.  While it is undisputed that Plaintiff was not given additional

work at one point, *id*. at 16, she admits that she had just told her superiors that she could not

finish all of her work, *id*. at 13–14, and Watkins testified that work was distributed based on the

interns' workload and that therefore "[n]ot everyone is going to get workload on the exact same

day," Fact-Finding Hr'g Tr. 253:14–254:20.  Plaintiff alleged in her complaint that she was

criticized for directly emailing a form instead of uploading it as instructed but that Samantha

Corelis, a non-disabled intern, did the same thing and was not criticized.  *See* Compl. 2–3.

However, she admits that Corelis copied Allers on the email to keep her in the loop, while

Plaintiff did not.  Pl.'s Mem. Supp. Resistance Mot. Summ. J. 17.  And while Plaintiff did

receive her performance review in an email as opposed to a face-to-face meeting, she provides

17

no evidence to contradict Watkins' testimony that she emailed the review simply because she ran out of time to meet with Plaintiff (as well as Corelis) before the deadline to return the reviews to the interns. *Id.* at 18–19. Plaintiff has provided this Court with no evidence from which it could infer that any of these incidents were related to her alleged disability.

Defendant admits that "there were issues in the Intern Homeroom, which resulted in an internal investigation and a letter of concern to Watkins." Def.'s Mem. Supp. Mot. Dismiss 36. But the existence of an unpleasant work environment, without more, does not mean that Plaintiff was subjected to a hostile work environment based on her alleged disability, which this Court also recognized in a similar case. *See Thomas v. McCarthy*, No. 4:19-cv-04114-SLD-JEH, at *14 (C.D. Ill. Feb. 11, 2020) ("Many interns indicated that the Home Room was a generally toxic environment and that Watkins treated all interns poorly. . . . Certainly, this evidence suggests that Watkins was a bad supervisor. But it does not suggest that she was biased against individuals with disabilities."). As there is no genuine dispute of material fact on this issue, Defendant is entitled to summary judgment on Plaintiff's hostile work environment claim.

### c. Retaliation

In Count II, Plaintiff alleges that her termination by Watkins was retaliation for her pursuit of a claim of disability discrimination with the Army EEO office. Compl. 4–5. Defendant moves for summary judgment on this claim, arguing that Plaintiff "cannot demonstrate that retaliation was the but-for cause of any of the actions of which she complains" and that Plaintiff has failed to show that Defendant's "neutral[,] non-retaliatory reasons for . . . [the] actions" were pretexts. Def.'s Mem. Supp. Mot. Summ. J. 37–38. Plaintiff responds that summary judgment is not appropriate because there is a dispute of material fact on the retaliation claim: "[t]here is evidence of suspicious timing with respect to the termination" in that Watkins

terminated Plaintiff one month after she filed the charge of discrimination.  Pl.'s Mem. Supp. Resistance Mot. Summ. J. 33–34.[13]

  To establish retaliation, a "plaintiff must prove that he engaged in protected activity and suffered an adverse employment action, and that there is a causal link between the two." *Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 563 (7th Cir. 2016).[14]  While evidence of suspicious timing can be helpful to a finding of retaliation, the Seventh Circuit has found that "temporal proximity between an employee's protected activity and an adverse employment action is rarely sufficient to show that the former caused the latter." *Coleman v. Donahoe*, 667 F.3d 835, 860 (7th Cir. 2012) (quotation marks omitted).  Evidence beyond timing is generally necessary to show a causal connection. *Id*. at 861–62 ("On their own, [the plaintiff's] evidence of suspicious timing and pretext might not be enough to show a causal connection between her protected activities and her suspension or termination.  Together, however, they are sufficient to withstand summary judgment and create a question for the jury."); *see also Burks*, 464 F.3d at 758–59 ("[T]he mere fact that one event preceded another does nothing to prove that the first event caused the second; the plaintiff also must put forth other evidence that reasonably suggests that her protected speech activities were related to her employer's discrimination and termination." (quotation marks omitted)).

---

[13] In her response, Plaintiff also argues that there is a material dispute of fact as to whether Plaintiff was retaliated against for complaining of discrimination to the Inspector General and for making a congressional inquiry.  Pl.'s Mem. Supp. Resistance Mot. Summ. J. 32.  Because Plaintiff alleges in her complaint only retaliation for contacting the Army EEO office, Compl. 4–5, she has waived any argument that Defendant retaliated against her for complaining of discrimination to the Inspector General and for making a congressional inquiry.  *See Anderson v. Donahoe*, 699 F.3d 989, 998 (7th Cir. 2012) (finding that a claim raised for the first time in opposition to summary judgment has been waived).

[14] While courts previously distinguished direct from indirect evidence of causation when evaluating a claim of retaliation, the Seventh Circuit "recently jettisoned that approach in favor of a more straightforward inquiry: Does the record contain sufficient evidence to permit a reasonable fact finder to conclude that retaliatory motive caused the discharge?"  *Lord*, 839 F.3d at 563.

Here, Plaintiff offers nothing more than allegations of suspicious timing—that Watkins had learned of Plaintiff's accusation of disability discrimination by May 15, 2018 and terminated her a month later, on June 20, 2018.  Pl.'s Mem. Supp. Resistance Mot. Summ. J. 33.  This, on its own, is insufficient to allow the retaliation claim to survive summary judgment.  Plaintiff attempts to bolster the retaliation argument by mentioning that she had received a favorable performance review prior to her termination, *id*. at 34, but as the Court finds above, Plaintiff has not shown that the reasons offered for her termination were pretextual, notwithstanding her argument about the performance appraisal.  *See supra* Section II(a).  Moreover, Defendant has cited to evidence that shows that Watkins had already begun exploring the prospect of terminating Plaintiff prior to the May 15, 2018 date on which she first became aware of Plaintiff's EEO contact, *see* Fact-Finding Hr'g Tr. 169:7–10 (testimony by Young that she had discussions with Watkins "about the growing concerns that [Watkins] had with [Plaintiff] . . . [a]s they developed"); *id*. 292:1–9 (testimony by Watkins that she "was already discussing . . . termination of [Plaintiff] prior to her filing her EEO complaint"); Novak Decl. 2, Def.'s Mem. Supp. Mot. Summ. J. Ex. 1 at 601–04, ECF No. 12 at 366–69 (noting that Watkins contacted Novak on or around May 9, 2018 regarding Plaintiff's behavior and that Novak recommended Plaintiff's termination), which Plaintiff admits, Pl.'s Mem. Supp. Resistance Mot. Summ. J. 24, effectively undercutting her argument that the timing was suspicious.  Plaintiff has not satisfied her burden of providing evidence showing that there remains a dispute of material fact as to whether her complaint of disability discrimination led to her termination.  The Court thus grants summary judgment in Defendant's favor on this claim.

**CONCLUSION**

For the foregoing reasons, Defendant John E. Whitley's Motion for Summary Judgment, ECF No. 7, is GRANTED. The Clerk is directed to enter judgment and close the case.

Entered this 30th day of March, 2021.

s/ Sara Darrow<br>
_____<br>
SARA DARROW<br>
CHIEF UNITED STATES DISTRICT JUDGE